UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

HEATHER DAWN THORPE,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀No. 4:23-CV-2-CEA-DCP
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
COMMISSIONER OF SOCIAL SECURITY,⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀)

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Judge. Heather Thorpe ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB"). For the reasons that follow, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## I.⠀⠀PROCEDURAL HISTORY

On December 12, 2019, Plaintiff completed an application for DIB pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, claiming a period of disability that began on January 1, 2013 [Tr. 224–25]. Plaintiff subsequently amended her alleged onset date of disability to December 2, 2019 [*Id.* at 234]. After her application was denied initially [*id.* at 87–105] and upon reconsideration [*id.* at 106–32], Plaintiff requested a hearing before an ALJ [*Id.* at 156–57]. A telephonic hearing was held before the ALJ on December 6, 2021 [*Id.* at 41–59]. On January 18, 2022, the ALJ found that Plaintiff was not disabled [*Id.* at 16–34]. The Appeals Council denied

Plaintiff's request for review on December 9, 2022 [*id.* at 5–10], making the ALJ's decision the final decision of the Commissioner. Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on February 3, 2023, seeking judicial review of the Commissioner's final decision under § 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing briefs [Docs. 9, 15, 16], and this matter is now ripe for adjudication.

## II.    BACKGROUND

The record in the case is extensive. The pertinent aspects to this Report of Plaintiff's educational and vocational experiences, medical records, and hearing testimony are summarized below.

### A.    Educational and Vocational Experience

Plaintiff was born on July 20, 1973, making her thirty-nine years old at the time of her alleged amended onset date [Tr. 240], which is categorized as a "younger individual." *See* 20 C.F.R. § 404.1563(c). She is a high school graduate, and has prior work experience as an embossing machine operator [Tr. 54], a housekeeping helper at a Bank, a sitter for a stroke patient, and a preparer of "prep-packs" for Colonel Littleton [*Id.* at 246].

### B.    Medical Records

In her December 2019 Disability Report, Plaintiff alleged disability due to fibromyalgia, carpel tunnel surgery causing nerve damage, confusion, forgetfulness, arthritis in her right thumb, a bunion on her left foot, high blood pressure, high cholesterol, two episodes of sugar bottoming out, irritable bowel syndrome ("IBS") with severe constipation, spastic colon, sleep apnea, excessive sweating, endometriosis, deficiencies in magnesium, potassium, and vitamin B-12, her back and hips feeling like they are locking up, and anxiety [Tr. 244].

The record in this case in replete with medical evidence, and while there is no need to summarize all of the medical records herein, the relevant records have been reviewed. Of particular focus are the opinions provided by the consultative examiner, Dr. Pauline Sawyers, Plaintiff's treating source, Nurse Practitioner Ginger Hamilton, and Dr. Woodrow Wilson.

### 1. Dr. Pauline Sawyers, PhD, HSP

On June 25, 2020, the consultative examiner, Dr. Pauline Sawyers, PhD, HSP ("Dr. Sawyers") conducted a clinical interview and administered a mental status exam on Plaintiff [Tr. 542–47]. Dr. Sawyers summarized Plaintiff's results as follows:

> Plaintiff was able to recall all three named items immediately after they were said to her, and only one after a three-minute delay. In the serial 3 subtractions from 20, she completed all 6 iterations successfully. She performed fairly in the Digit Span tasks, successfully completing 5 digits forwards and 4 digits backwards. . . .She performed well on simple math problems, able to do multiplication, division, addition and subtraction and performed well on basic vocabulary. She showed a good capacity for abstract thinking and understanding.

[*Id.* at 544]. Dr. Sawyers concluded that Plaintiff "appears to fall into the average range of intellectual functioning," showed moderate impairment in her short-term memory, ability to sustain concentration, and ability to adapt to change [*Id.* at 545]. She stated that Plaintiff did not have an impairment in her long-term or remote memory functioning and appears to be able to follow written and spoken instructions [*Id.*]. Dr. Sawyers found that Plaintiff was unable to handle her finances and that Plaintiff says she is able to do housework a little at a time due to pain [*Id.*]. Dr. Sawyers made no determinations as to Plaintiff's ability to work nor did she suggest any work-place limitations though her diagnostic impressions included Adjustment Disorder with mixed anxiety and depressed mood as well as Nicotine Use Disorder [*See id.* at 545–46].

3

## 2. Nurse Practitioner Ginger Hamilton, FNP-C

The record includes reports from Nurse Practitioner Ginger Hamilton ("NP Hamilton") showing that she treated Plaintiff on three occasions, on June 29, 2020 [Tr. 606–08], October 26, 2021 [*id.* at 611–14], and December 16, 2021 [*Id.* at 625–26]. Plaintiff refers to NP Hamilton as her "treating provider" [*Id.* at 611].

Plaintiff provided a summary report for her visit to NP Hamilton on June 29, 2020 [*Id.* at 606–08]. The report indicates that the purpose of visit was to refill medications, including Linzess. After listing the medications, NP Hamilton stated "[Plaintiff] feels like all symptoms are controlled" [*Id.* at 606].

On October 26, 2021, NP Hamilton completed a checkbox form entitled "MEDICAL OPINION RE: ABILITY TO DO WORK-RELATD ACTIVITES (PHYSICAL)" [*Id.* at 612–14]. On that form, NP Hamilton indicated that, due to Plaintiff's fibromyalgia, Plaintiff could lift and carry on an occasional and frequent basis fifty pounds, stand and walk for about four hours with normal breaks during an eight-hour workday, and sit for about two hours [*Id.* at 612]. She stated that Plaintiff could sit and stand ninety minutes before changing position and must walk around for five minutes every ninety minutes [*Id.*]. NP Hamilton determined that Plaintiff would not need to lie down at unpredictable intervals during an eight-hour workday and that Plaintiff could frequently stoop (bend), crouch, and climb stairs but could never twist or climb ladders [*Id.* at 612–13]. Further, Plaintiff should avoid concentrated exposure to extreme cold but has no restriction to extreme heat, high humidity, fumes, odors, dusts, gases, perfumes, soldering fluxes, solvents/cleaners, or chemicals [*Id.* at 613]. Finally, NP Hamilton opined that Plaintiff would miss, on average, about one day per month from work due to her impairments [*Id.* at 614].

4

Following the telephonic hearing before the ALJ on December 6, 2021, the ALJ gave Plaintiff's counsel thirty days "to get clarification from a treating source about the intestinal issues" [*Id.* at 58]. In response, NP Hamilton provided a second opinion dated December 16, 2021, in the form of circling "yes" or "no" to questions presented by Plaintiff's counsel pertaining to Plaintiff's IBS symptoms [*Id.* at 626]. On this form, NP Hamilton circled "yes" when asked whether it would be possible that Plaintiff would require restroom breaks that are "unpredictable in both length and frequency due to severe diarrhea from her Linzess medication" [*Id.*]. NP Hamilton also circled "yes," indicating that it would be possible that plaintiff would require restroom breaks totaling more than forty-seven minutes per day and that the diarrhea symptoms could last for more than two hours after taking Linzess [*Id.*]. Finally, NP Hamilton agreed that Plaintiff must take Linzess daily due to her condition [*Id.*].

### 3. Dr. Woodrow Wilson, M.D.

Plaintiff underwent a consultative examination by Dr. Woodrow Wilson ("Dr. Wilson") on August 5, 2020 [Tr. 548–54]. Dr. Wilson's report, in relevant part, states that Plaintiff has a history of IBS for which she is on medication and that Plaintiff states the medication is helping her [*Id.* at 548]. In listing Plaintiff's diagnoses, Dr. Wilson included, among other things, "history of irritable bowel syndrome on medication" and decreased memory [*Id.* at 550]. Dr. Wilson provided a medical assessment for work that stated "[Plaintiff] could sit for six to eight hours in an eight-hour day, standing and walking two to four hours each. [Plaintiff] thinks she could lift up to 20 lbs[.] occasionally. [Plaintiff] is able to take care of her own activities of daily living." [*Id.*].

### C. Hearing Testimony

At the December 6, 2021 hearing, Plaintiff and a vocational expert ("VE") testified. The Court has carefully reviewed the transcript of the proceeding and summarized relevant portions of

the testimonies below.

### 1. Plaintiff's testimony

Plaintiff testified that she was currently working sixteen hours a week at a daycare [Tr. 46]. She stated that she has arm pain that "starts between [her] shoulder blades and goes down both arms" due to fibromyalgia [*Id.* at 46–47]. As a result of this pain, Plaintiff said that she cannot lift or hold anything for a long time though that she might be able to hold a gallon of milk with both hands and could not hold many bags of groceries at one time [*Id.* at 47]. Plaintiff disagreed with NP Hamilton's assessment that she could lift fifty pounds [*Id.* at 48]. Plaintiff also testified that she could stand for about fifteen minutes before her back starts to hurt, that she could walk for about thirty minutes, and that her back hurts if she sits for longer than thirty minutes [*Id.* at 50–51]. Further, Plaintiff stated these limitations are related to her fibromyalgia [*Id.* at 51].

As for Plaintiff's claims regarding carpel tunnel, Plaintiff testified that she had carpel tunnel surgery on both hands in June of 2019 which helped her but that she still has pain "every now and then" [*Id.* at 48]. Plaintiff asserted that she does not sleep very well because of sleep apnea, and she feels "like [she is] squirming all over the place. But [she is] just tired all the time. [She doesn't] have any energy" [*Id.* at 49].

Plaintiff stated at the hearing that she works three-and-a-half hours on Mondays, Tuesdays, Thursdays, and Fridays [*Id.*]. When asked by her counsel whether she had any physical problems at her job, Plaintiff responded, "I don't have any problems with the job but, you know, if a person can't do the job, nobody is going to want you there" and that she is not able to do what her coworkers are able to do [*Id.*]. Plaintiff maintained that her employer is aware of her limitations and tries to accommodate by letting Plaintiff work a few hours each day compared to other coworkers who work forty or fifty hours each week [*Id.*].

6

When asked whether she had any other physical issues that kept her from working full-time, Plaintiff responded she has stomach and bowel problems [*Id.* at 51]. Specifically, Plaintiff testified that she has scar tissue that causes her bowels and intestines to get stuck together which was "fixed," but she still has severe constipation for which she has to take medication [*Id.* at 51–52]. This medication, Plaintiff claimed, must be taken every day and requires her to be at home [*Id.* at 52]. However, Plaintiff asserted that she can go two to three days without taking the medication before her stomach "will cramp so bad" [*Id.*]. Once she takes the medication, it can take up to two hours before it starts working, at which point she has diarrhea and goes back and forth to the restroom for an hour to an hour-and-a-half [*Id.* at 52–53].

Finally, Plaintiff testified regarding her mental limitations that she is not receiving mental health treatment but "feel[s] like sometimes [she] could use some" [*Id.* at 53]. Plaintiff stated that her memory is also keeping her from being able to work full-time and that her provider mentioned that her memory problems could be from her fibromyalgia [*Id.*].

### 2. Vocational expert testimony

The VE testified that Plaintiff's past work would be precluded because it was either at a higher exertional level or a higher Skill Level Vocational Preparation ("SVP") level given the ALJ's following hypothetical:

> [A] hypothetical individual of the same age, education and past relevant work as the Claimant with the residual functional capacity to perform a reduced range of light work. Needs to avoid extreme cold, never crouching, crawling or kneeling, other posturals limited to the occasional level, never ladders, ropes, scaffolds, heights, dangerous machinery or driving motor vehicles.
>
> Handling and fingering limited to the frequent level, rare overhead reaching. And as far as psychological restrictions, can understand, remember and carry out simple/routine instructions. Can understand the modern terms of instructions and procedures involved in performing unskilled work. Can use reason and judgment to make the work-related decisions typically required for unskilled work.

[Tr. 55].

The VE stated that there would be jobs in the national economy including as an order caller, DOT code 209.667-014, SVP: 2, light exertional level; routing clerk, DOT code 222.687-022, SVP: 2, light exertional level; marker, DOT 209.587-034, SVP: 2, light exertional level [*Id.* at 56]. The VE clarified that neither overhead reaching nor "reduced ranges of light [work]" is defined within the DOT but that her testimony is based on her "review of the job descriptions in the DOT" as well as her professional experience and education [*Id.*].

Plaintiff's counsel asked the VE to discuss how many absences and how much time off task "an employer is likely to tolerate in unskilled work, specifically the first few months" [*Id.*]. The VE responded that in addition to standard breaks, such an employer would tolerate no more than ten percent time off task which is equivalent to forty-seven minutes in a workday, which is the standard guide [*Id.* at 56–57]. She continued, "when it's a higher skill level and -- or even SVP: 2 level that require like monetary responsibilities" that an employer would allow for no more than five percent off task [*Id.* at 57]. With regard to absenteeism, the VE stated that "most employers allow up to a day of absenteeism . . . even in the first six months" and that "any more than that on a continual basis would lead to termination" [*Id.*].

Finally, counsel asked the VE whether an employer would tolerate an employee who "was away from their workstation and needed frequent restroom breaks that exceeded that 47-minute per day [standard guide]" that were unpredictable in occurrence and frequency" [*Id.*]. The VE answered that an employer was not likely to tolerate such breaks on an ongoing basis [*Id.*].

## III.    DISBILITY ELIGIBILITY AND ALJ FINDINGS

### A.    Disability Eligibility

"Disability" means an individual cannot "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20

9

C.F.R. § 404.1520(a)(4), -(e). RFC is the most a claimant can do despite his limitations. *Id.* § 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

**B.    The ALJ's Findings**

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2.  The claimant has not engaged in substantial gainful activity since December 2, 2019, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: fibromyalgia, carpal tunnel syndrome, sleep-related breathing disorders, inflammatory bowel disease, obesity, depression, and anxiety disorder (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: needs to avoid extreme cold; never crouching, crawling or kneeling other posturals limited to the occasional level; never ladders, ropes, scaffolds, heights, dangerous machinery or driving motor vehicles; handling and fingering limited to the frequent level; rare overhead reaching; can understand, remember and carryout simple routine instructions; can understand, and learn terms, instructions and procedures involved in performing unskilled work; can use reason and

10

judgment to make work related decisions typically required for unskilled work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 20, 1973 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 2, 2019, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 21–34].

## IV.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record

as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the

claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## V.     ANALYSIS

Plaintiff argues that the Commissioner's final decision must be remanded because the ALJ (1) failed to accommodate Plaintiff's mental limitations that he found severe at step two in his RFC determination or to explain the reason he omitted the limitations [Doc. 9 pp. 4–7]; (2) failed to adopt or reject the limitations set forth in Dr. Sawyers's opinion finding Plaintiff has a moderate limitation in concentration, persistence, or pace [*id.* at 7–9]; (3) failed to adopt or reject the limitations set forth in NP Hamilton's opinion finding Plaintiff is completely disabled [*id.*]; and (4)  failed to account for Plaintiff's IBS in his RFC determination, despite finding Plaintiff's IBS to be a severe impairment [*Id.* at 9–11].

The Commissioner responds that the ALJ's disability determination is supported by substantial evidence because the ALJ (1) accounted for Plaintiff's mild-to-moderate mental limitations in his RFC determination, including those contained in Dr. Sawyers's opinion [Doc. 15 pp. 4–6]; (2) explained his rationale regarding NP Hamilton's opined standing-walking-sitting limitations and was not otherwise required to adopt NP Hamilton's findings word-for-word even if he found her opinion persuasive [*id.* at 6–8]; and (3) relied on examination findings and Plaintiff's own statements showing her IBS symptoms controlled with medication without mention

13

of adverse side effects and overall normal abdominal findings despite her IBS [*Id.* at 8–9].

After considering the parties' filings and the record as a whole, the undersigned concludes that (1) the ALJ accommodated Plaintiff's mental impairments by limiting her to "simple routine instructions"; (2) the ALJ did not err in his consideration of NP Hamilton's opined standing-walking-sitting limitations because he explained his decision and his finding was otherwise supported by substantial evidence; and (3) substantial evidence supported the ALJ's determination that Plaintiff's IBS did not require additional accommodation because it was being treated with medication.

### A.    Plaintiff's Mental Impairments

Plaintiff argues that (1) the ALJ was required to provide "adequate expression via specific function limitations in the RFC determination" for any of Plaintiff's mental limitations beyond limiting her to unskilled work [Doc. 9 p. 5]; and (2) the ALJ failed to accommodate the moderate limitation in concentration, persistence, or pace and mild limitation in social relating contained in Dr. Sawyers's opinion, despite finding the opinion persuasive [*Id.* at 6–7]. Because both of these issues concern the ALJ's accounting for Plaintiff's mental limitations, the Court will  address the arguments together.

A claimant's RFC represents the "most [a claimant] can still do despite [the claimant's] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014) (citing 20 C.F.R.404.1545(a)(1)); *see also* SSR 96-8p, 1996 WL 374184, at *1 (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").  If an ALJ determines a claimant does not satisfy the listing requirements for one or more mental impairments at step three—such that they are required to proceed to step four and

make an RFC determination—the ALJ is "not required to include a paragraph B finding as part of [their] RFC determination" or otherwise "mirror" their step-three findings. *Bookmyer v. Comm'r of Soc. Sec.*, No. 1:22-cv-1004, 2023 WL 2643496, at *6 (W.D. Mich. Mar. 27, 2023). That is because "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings." SSR 96-8p, 1996 WL 374184, at *4 (June 2, 1996). Instead, the pertinent question is whether the ALJ's RFC determination and accompanying hypothetical questions posed to the vocational expert "accurately portray a claimant's individual physical and mental impairments." *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010)); *Bookmyer*, 2023 WL 2643496, at *6 ("The pertinent question, then, is whether the ALJ's RFC assessment properly account for Plaintiff's mental limitations."). "Courts . . . have also found, however, that an ALJ's failure to explain how a claimant's mild psychological limitations affect the RFC assessment may constitute reversible error where the ALJ makes no mention of the claimant's mental impairments in the RFC analysis." *Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-cv-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017) (internal citations omitted).

But such is not the case here. The ALJ considered Plaintiff's mental limitations in the step two and RFC analyses as well as in the hypothetical question posed to the VE, and he provided certain limitations to address Plaintiff's mild-to-moderate limitations in certain functional areas as supported by the record.

At step two in the sequential analysis, the ALJ discussed Plaintiff's mental impairments at length, and later in his decision, the ALJ referred back to it in his RFC analysis, stating "[a]s

15

detailed above in finding 4, the overall record simply does not support more than moderate mental health related limitations" [*Id.* at 30]. *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (citation omitted) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion."); *Simmons v. Berryhill*, No. 4:17-CV-15-TWP-CHS, 2018 WL 1413179, at *5 (E.D. Tenn. Mar. 21, 2018) (citations omitted) ("The ALJ's analysis of a treating physician's opinion may cite inconsistencies in the evidence, but the ALJ need not refer again to specific inconsistencies again when those were listed earlier in the decision.").

In the step two discussion, the ALJ found that Plaintiff had a mild limitation in understanding, remembering, or applying information, noting that Plaintiff is able to follow instructions, "shop for groceries and other personal goods, indicating abilities to plan for such purchases," drive, understand financial transactions, prepare meals, and do laundry and other household chores [Tr. 24 (citing Exhs. B3A, B4E, B5A, B9F )]. He also found Plaintiff had a mild limitation in interacting with others [*Id.*]. In analyzing this factor, the ALJ discussed that Plaintiff "reports being able to shop in stores, which involves interacting with cashiers and tolerating the presence of other shoppers," maintains relationships with her family members, visits relatives, and "the medical record routinely notes that she gets along well with different medical providers" [*Id.* (citing Exhs. B3A, B4E, B5A, B5F, B6F, B7F, B8F, B9F, B11F, B12F, B13F, B14F, B16F)]. In addition, while the ALJ found Plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace, he noted that Plaintiff "is able to shop for groceries and other items, which show the ability to persist with a task despite distractions" [*Id.* at 25 (citing B3A, B4E, B5A, B9F)]. The ALJ also found it notable that Plaintiff drives which "requires substantial concentration and focus"

and that she is able to maintain concentration and persistence to do household chores [*Id.*]. Finally, the ALJ determined that Plaintiff has a moderate limitation in adapting or managing oneself [*Id.* (citing Exhs. B3A, B4E, B5A, B9F)]. However, the ALJ noted that Plaintiff "is able to perform her own personal care, prepare meals, and do some household chores, which shows that she has some ability to adapt and manage[] herself" [*Id.*]. The ALJ also stated that "[t]he record does not show that the claimant has only minimal capacity to adapt to changes or demands not already part of the claimant's daily life" [*Id.*].

In addition to the discussion at step two, the ALJ thoroughly considered Plaintiff's mental abilities in the explanation following the RFC determination. He detailed the results from Dr. Sawyers's mental status exam including Plaintiff's ability to think clearly and logically, fully recall stated items immediately and fewer items after three minutes, and complete numerical problems [*Id.* at 29]. As for Plaintiff's mental functioning more generally, the ALJ summarized Dr. Sawyers's findings as follows:

> She showed a good capacity for abstract thinking and understanding. Dr. Sawyer[s] also states that the claimant appears to fall into the average range of intellectual functioning. She states she has some problems with her short-term memory. She stated that sometimes she forgets to take her medications, forgets appointments at times even when written on the calendar. She showed evidence of moderate impairment in her short-term memory. She showed evidence of moderate impairment in her ability to sustain concentration. She showed no evidence of impairment in her long-term and remote memory functioning. The claimant was cooperative and her mood at the time of the evaluation appeared euthymic . . . . [S]he appears unable to handle finances.

[*Id.* at 29–30 (citing to Exh. B9F)].

The ALJ found Dr. Sawyers's opinion "persuasive as a mild limitation in social relating, and moderate limitations in sustaining concentration and adapting are consistent with the overall record in this case" [*Id.* at 30]. However, the ALJ concluded that "the record simply does not support more than moderate mental health related limitations" [*id.*] and provided accommodations

17

for Plaintiff's mental impairments to the extent they were supported by the record in the question posed to the VE [*id.* at 55–56] and in the RFC [*Id.* at 26].

The ALJ further supported his decision finding that "[t]he record shows no current treatment for any of [Plaintiff's] mental health related complaints" [*Id.* at 30]. It is well established in the Sixth Circuit that "modest treatment. . . is inconsistent with a finding of disability" and, in this case, Plaintiff was not receiving mental health treatment and provided no explanation for why she was not. *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 335 (6th Cir. 2007). Nevertheless, the ALJ considered Plaintiff's anxiety and depression symptoms. The ALJ noted in his decision that while the record shows Plaintiff's mental health related complaints, "her symptoms have been treated with medication management treatment [and] [h]er more recent record also indicate[s] that she reports to having increased anxiety after she quit smoking" [*Id.* (citing Exhibits B5F and B11F)].

The ALJ translated these impairments to the following accommodations in both the hypothetical question posed to the VE and in his RFC determination: "light work as defined in 20 CFR 404.1567(b). . ." and Plaintiff "can understand, remember and carryout simple routine instruction; can understand, and learn terms, instructions and procedures involved in performing unskilled work; [and] can use reason and judgment to make work related decisions typically required for unskilled work" [*Id.* at 26; *see also id.* at 55]. The Sixth Circuit has held that limiting a plaintiff to simple, routine tasks or unskilled work accounts for limitations in concentration, persistence, and pace. *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625 (6th Cir. 2016). Further, the ALJ is not required to provide specific RFC accommodations for limitations in the paragraph B criteria. SSR 96–8p 1996 WL 374184, at *4 ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment").

Further, "[t]he ALJ was under no obligation to include limitations in social functioning in [Plaintiff's] RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis." *Beasley v. Colvin*, 520 Fed. App'x. 748, 754 (10th Cir. 2013); *see also Negron v. Berryhill,* No. 3:14-CV-00852, 2017 WL 2546336, at *17 (M.D. Tenn. June 13, 2017) (listing cases finding ALJs are not required to provide specific accommodations for paragraph B impairments found at steps two and three).

Finally, the Court notes that the burden is on Plaintiff through step four of the sequential process to prove "the existence and severity of limitations caused by her impairments." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also, Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). "Plaintiff does not indicate what additional functional limitations the ALJ should have assessed to accommodate for her depression." *Shamsud-Din*, 2017 WL 3574694, at *7 (citing to *Jones*, 336 F.3d at 474). Here, because Plaintiff has not cited to any evidence in the record that provides for specific and concrete, functional or non-exertional workplace limitations pertaining to her mental limitations, the Court finds that the ALJ's RFC adequately accommodated Plaintiff's moderate mental impairments.

In light of the above, the undersigned finds that the ALJ accommodated for Plaintiff's mental limitations in the RFC and otherwise explained why he was not providing a greater accommodation. Further, Plaintiff has not carried her burden to show why the ALJ's assessment of Plaintiff's RFC should be disturbed.

### B.    The ALJ Properly Considered Nurse Practitioner Hamilton's Opinion

Plaintiff next argues that the ALJ erred by failing to adopt, or explain why he rejected, the standing-walking-sitting limitations contained in NP Hamilton's opinion [Doc. 9 pp. 7–9]. On October 26, 2021, NP Hamilton filled out a medical opinion form regarding Plaintiff's ability to

do physical work-related activities [Tr. 612]. The form asked NP Hamilton to provide her opinion—in the form of check-box answers with a space for additional explanation at the end— regarding Plaintiff's ability to perform (1) general work-related physical functions such as lifting, carrying, standing, walking, and sitting; (2) postural activities such as twisting, stooping, and crouching; (3) work activities under certain environmental conditions such as extreme heat and cold; and (4) specific physical functions such as reaching, fingering, pushing/pulling, handling, and feeling [*Id.* at 612–14]. When asked her opinion about Plaintiff's "[m]aximum ability to stand and walk (with normal breaks) during an 8-hour day," NP Hamilton checked the box "about 4 [hours]" [*Id.* at 612]. When asked Plaintiff's "[m]aximum ability to sit (with normal breaks) during an 8-hour day," she checked the box "about 2 [hours]" [*Id.*]. Finally, when asked what medical findings support her opined limitations, NP Hamilton listed "fibromyalgia" [*Id.* at 613].

On appeal, Plaintiff argues that the ALJ found NP Hamilton's opinion to be "partially persuasive" but that "the reason the ALJ found it only 'partially persuasive' is because the ALJ determined that [Plaintiff] was 'more physically restricted'" [Doc. 9 p. 8 (quoting Tr. 31)]. Plaintiff notes that "[i]f the ALJ accepts the opinion of a medical source, then he is required to include the limitations identified by that medical source in his RFC finding" or "explain [his] reasoning for rejecting the probative evidence that [he] did not accept" [*Id.* at 7 (first citing 20 C.F.R. § 404.1520c(b)(2); then citing SSR 96-8p, 1996 WL 374184)]. Plaintiff asserts that remand is required because "the ALJ completely ignored [NP] Hamilton's opinion that [Plaintiff] was restricted to standing/walking four hours maximum and sitting two hours maximum during an eight-hour workday" and "[t]his limitation alone is outcome dispositive" [*Id.* at 8 (citing SSR 96-8p, 1996 WL 374184, at *1)].

20

The Commissioner argues that "the ALJ properly considered the entire record—not just [NP] Hamilton's opinion—and assessed RFC limitations that are supported by substantial evidence" [Doc. 15 p. 7 (citing Tr. 26–33)]. The Commissioner states that "the ALJ . . . found Plaintiff to be more physically restricted" and "[a]ccordingly, . . . further limited Plaintiff" to additional postural limitations such as never crouching, crawling, or kneeling [*Id.* at 7–8]. Further, she maintains that NP Hamilton found Plaintiff "could stand and walk for about 4 hours; [and] could sit for about 2 hours during an 8-hour workday" while the ALJ " noted that these findings would limit Plaintiff to a range of either reduced medium work or a range of light work" [*Id.*]. The Commissioner therefore argues that "contrary to Plaintiff's argument regarding the ALJ's limitations regarding sitting, standing, and walking, the ALJ specifically explained his rationale" [*Id.* at 8 (citing Tr. 31)]. Additionally, the Commissioner responds that "[c]ontrary to Plaintiff's assertion, there is no requirement that an ALJ, by finding a doctor's opinion persuasive, must adopt the doctor's findings word-for-word in the RFC" and "[n]othing in the currently-applicable regulations . . . adds a requirement that an ALJ assess an RFC that exactly matches the wording of an opinion or medical finding he finds persuasive [*Id.* at 6–7 (first citing 20 C.F.R. §§ 404.1527, 416.927; then citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015); then citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a))].

The ALJ's decision is "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Robinson v. Comm'r of Soc. Sec.*, 180 F. Supp. 3d 497, 500 (S.D. Ohio 2016) (citing *Buxton v. Halter, Comm'r of Soc. Sec.*, 246 F.3d 762 (6th Cir. 2001)). In other words, it is not enough to disrupt the Commissioner's decision that evidence exists on the record that conflicts with the ALJ's decision. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). Under 20 C.F.R. § 404.1520c, "an ALJ evaluates 'the persuasiveness of

medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors.'" *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *1 (6th Cir. Dec. 1, 2022) (citations omitted). However, the regulations only require an ALJ to discuss the first two steps. *See id.* (citing another case citing 20 C.F.R. § 404.1520c(b)(2)).

In this case, the ALJ properly considered NP Hamilton's opinion and explained his reasoning for finding it partially persuasive. The ALJ found NP Hamilton's opinion "to be partially persuasive as her findings would limit the claimant to a range of either reduced medium work or a range of light work" [Tr. 31]. However, the ALJ concluded that Plaintiff was "more physically restricted due to her fibromyalgia, carpal tunnel syndrome, obstructive sleep apnea, inflammatory bowel disease, and obesity" than NP Hamilton determined and "further limited her to never crouching, crawling or kneeling and all other posturals limited to the occasional level, she can never climb ladders, ropes, scaffolds, heights, dangerous machinery or driving motor vehicles, she could handle and finger frequently and could do rare overhead reaching" [*Id.*; *see also id.* at 26]. Therefore, the ALJ adopted NP Hamilton's decision related to Plaintiff's sitting, standing, and walking ability and to the extent he disagreed, he explained as much by further limiting her because he found Plaintiff more limited than NP Hamilton.

Plaintiff appears to suggest that NP Hamilton's opinion included an implied limitation that Plaintiff could work only six total hours per day, the purported combined total based on a four-hour stand and walk limitation and a two-hour limitation on sitting, and that the ALJ ignored this portion of the opinion [*See* Doc. 9 p. 8]. Plaintiff maintains that such limitation is "outcome dispositive because it would preclude [Plaintiff] from performing any work" [*Id.* (citing to SSR

22

96-8p)]. The Commissioner responds by pointing to the ALJ's notation that NP Hamilton's finding would limit Plaintiff to a range of either reduced medium work or a range of light work. The ALJ's discussion of NP Hamilton's opinion demonstrates that he did not ignore or misconstrue NP Hamilton's report. NP Hamilton indicated that Plaintiff could "stand and walk" for four hours [Tr. 31]. This answer combined with her finding that Plaintiff could occasionally and frequently lift/carry fifty pounds, is in line with a finding of light to medium work and would be inconsistent with finding that Plaintiff is only capable of sedentary work only. Sedentary work is defined as "work involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(b). "'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Elias v. Comm'r of Soc. Sec.*, No. 17-14033, 2019 WL 1415489, at *6 (E.D. Mich. Jan. 26, 2019) (citing to SSR 83-10, 1983 WL 31251), *report and recommendation adopted*, No. CV 17-14033, 2019 WL 1399944 (E.D. Mich. Mar. 28, 2019). "Frequently" means occurring from one-third to two-thirds of an eight-hour day, or 2.67-5.33 hours. *See id.* Light work "requires a person to be on their feet for 2.67-5.33 hours in a day, while lifting and carrying up to 10 pounds in that time." *Id.* at *7. If NP Hamilton believed Plaintiff is capable of lifting fifty pounds occasionally and frequently, then by logical extension, she must be able to be on her feet for 2.67 to 5.33 hours a day and, therefore, is capable of at least light work. Thus, the ALJ reasonably interpreted NP Hamilton's opinion to hold that Plaintiff is capable of light to medium work but then further found that Plaintiff was more limited than NP Hamilton concluded, and therefore added additional limitations. *See Key*, 109 F.3d at 273 ("The decision of

23

an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."); *see also La Cour v. Astrue*, No. CV101800, 2010 WL 4056091, at \*8 (C.D. Cal. Oct. 15, 2010) ("This Court will not second-guess the ALJ's reasonable interpretation of the medical evidence, even if such evidence could give rise to inferences more favorable to plaintiff."). Accordingly, the ALJ adopted NP Hamilton's opinion and to the extent he did not, he fully explained his reasoning.

Further, the ALJ's RFC determination that Plaintiff is capable of light work is supported by the findings of Dr. Wilson. Plaintiff was given a consultative examination by Dr. Wilson on August 5, 2020 [Tr. 548–54]. Based on his examination of Plaintiff, Dr. Wilson concluded that "[Plaintiff] could sit for six to eight hours in an eight-hour day, standing and walking two to four hours each.[1] [She] thinks she could lift up to 20 lbs[.] occasionally. [She] is able to take care of her own activities of daily living." [*Id.* at 550]. Dr. Wilson's findings are similarly consistent with a range of light to medium work. *Elias*, 2019 WL 1415489, at \*7 (citing SSR 83-10, 1983 WL 31251, at \*5) ("By logical extension, light work requires a person to be on their feet for 2.67-5.33 hours in a day, while lifting and carrying up to 10 pounds in that time."), *report and recommendation adopted*, No. CV 17-14033, 2019 WL 1399944 (E.D. Mich. Mar. 28, 2019). Under the substantial evidence standard of review, the undersigned finds that the ALJ did not err in considering NP Hamilton's opined standing-walking-sitting limitations in part because his finding was otherwise supported by substantial evidence.

---

[1] The Court notes that the ALJ's decision misstated Dr. Wilson's conclusion. The ALJ stated that Dr. Wilson found Plaintiff "could stand/walk for 2 hours each" [Tr. 30]. However, the ALJ also notes that Dr. Wilson's exam "clearly supports a finding that the claimant could perform a range of light work" [*Id.* at 30–31].

24

### C.     The ALJ's RFC Accounted for Plaintiff's IBS

Plaintiff asserts that the ALJ failed to account for Plaintiff's IBS despite the ALJ finding that Plaintiff's IBS was severe at step two and was significant enough to ask Plaintiff's counsel at the hearing to obtain a letter from a treating source about her intestinal issues [Doc. 9 pp. 9–11]. Following the December 2020 hearing, NP Hamilton completed a checkbox form in which she indicated that Plaintiff: (1) would require restrooms breaks that were unpredictable in both length and frequency due to severe diarrhea from taking Linzess, (2) could possibly require restrooms breaks that would exceed forty-seven minutes per day, (3) would experience severe diarrhea symptoms for more than two hours after taking Linzess, and (4) must take Linzess daily [*See* Tr. 626]. Plaintiff argues that despite this additional evidence, the ALJ cherry-picked medical evidence and provided "absolutely no work-related limitations" [Doc. 9 p. 11]. The Commissioner responds that the ALJ found NP Hamilton's opinion to be unpersuasive and not supported by the medical record [Doc. 15 pp. 8–9]. The Commissioner argues that in finding NP Hamilton's December 2020 opinion to be unpersuasive the ALJ looked to Plaintiff's previous visits with physicians, including with NP Hamilton in September 2020, in which she either did not report having any adverse side effects, such as severe diarrhea, from the Linzess or reported that her IBS and constipation were doing well or were controlled with medication [*Id.* at 8 (citing Tr. 31, 487, 496, 503, 604–05)]. Finally, the Commissioner argues that Plaintiff has not provided medical evidence to show that she requires a workplace accommodation for her IBS [*Id.* at 9]. Upon review, the undersigned finds that the ALJ provided good reasons in his decision to not provided an accommodation for Plaintiff's IBS and his decision was supported by substantial evidence.

It is settled law that upon review of an ALJ's decision, a court looks to whether substantial evidence supports the ALJ's conclusion. *See* 42 U.S.C. § 405(g); *Walters v. Comm'r*, 127 F.3d

525, 528 (6th Cir. 1997). "'Substantial evidence' is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Stanley v. Sec. of Health & Hum. Servs.,* 39 F.3d 115, 117 (6th Cir. 1994) (quoting *Richardson v. Perales,* 402 U.S. 389 (1971)). Under this standard, there may be conflicting evidence against the ALJ's decision, but that alone is insufficient to warrant a remand. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). Under 20 C.F.R. § 404.1520c, "an ALJ evaluates 'the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors.'" *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *1 (6th Cir. Dec. 1, 2022) (citations omitted). However, the regulations only require an ALJ to discuss the first two steps. *See id*. (citing another case citing 20 C.F.R. § 404.1520c(b)(2)).

In this case, substantial evidence supported the ALJ's determination that Plaintiff's IBS did not require additional accommodation because it was being treated with medication. The ALJ determined Plaintiff's IBS to be severe and NP Hamilton's December 2020 report indicated the severity of that condition. However, the ALJ found NP Hamilton's December 2020 opinion unpersuasive and unsupported by the medical record [*See* Tr. 31]. The ALJ supported this conclusion by citing to visits with NP Hamilton on December 30, 2019 [*id.* at 487–541] and June 29, 2020 [*id.* at 603–10][2], as well as a visit to Dr. Wilson on August 5, 2020 [*Id.* at 548–54]. During all these visits, Plaintiff reported that "medication was controlling her constipation and/or

---

[2]     The ALJ makes reference to a visit with NP Hamilton in September 2020. The Court notes that the records from that visit indicate that the visit was to test Plaintiff for COVID-19 [Tr. 609–10].

that her irritable bowel syndrome was doing well with medication" and otherwise did not report adverse side effects from taking medication until her visit with NP Hamilton after the hearing in December 2020 [Tr. 32 (citing to Exh. B8F, pgs. 1, 10, 17)]. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 800 (6th Cir. 2004) (citing to 20 C.F.R. § 404.1529(c)(3)(iv)) ("The ALJ is permitted to consider the effectiveness of medication used to control pain and other symptoms associated with a claimant's impairments."). While NP Hamilton's December 2020 report is contrary to the ALJ's conclusion, there is nevertheless substantial evidence to support the conclusion that Plaintiff's IBS symptoms are controlled and do not require additional limitations.

## VI. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[3] Plaintiff's statement of errors be **VACATED**, the Commissioner's decision be **AFFIRMED,** and the Clerk of Court be **DIRECTED** to close this case.

Respectfully Submitted,

Debra C. Poplin
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153–54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).